UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
UNITED STATES OF AMERICA,                :    10 Cr. 856-01 (DLC)
                                         :
            -v-                          :    OPINION AND ORDER
                                         :
IFTIKHAR ALI RIZVI, a/k/a "Billa         :
Bronx",                                  :
                                         :
                        Defendant.       :
                                         :
-----------------------------------------X

APPEARANCES:

For the Government:

Sarah Lai
David Miller
United States Attorney's Office
One Saint Andrew's Plaza
New York, NY 10007

For the Defendant:

John Burke
26 Court Street, Suite 1016
Brooklyn, NY 11242

DENISE COTE, District Judge:

   Iftikhar Ali Rizvi ("Rizvi") has moved to withdraw his plea of guilty. The application is denied.

BACKGROUND

   On June 22, 2010, Rizvi was arrested on federal fraud charges. Steven Frankel was appointed to represent him. Rizvi retained Bernard Alan Seidler as his attorney; Mr. Seidler filed

a notice of appearance on July 16.  On October 20, Rizvi was indicted with three others in a four-count indictment.  A superseding indictment filed on October 27 added a fifth defendant.  Rizvi was charged in three counts with conspiring to commit bank fraud, access device fraud and identity theft, and in one count with committing aggravated identity theft.

At a conference held on November 9, trial was scheduled for June 20, 2011.  On February 10, 2011, Rizvi's bail was revoked.  On March 28, Robert Soloway was appointed as counsel for Rizvi, replacing Mr. Seidler.

On May 6, Rizvi entered a plea of guilty to the substantive count of committing aggravated identity theft.  Between May 9 and May 24, three of Rizvi's four co-defendants pleaded guilty.  The trial date for Rizvi's remaining co-defendant, Shahid Bhatti ("Bhatti"), was adjourned on June 2 to a new date of June 27, and again on June 21 to a new date of July 5.  On July 1, Bhatti also pleaded guilty.  The only co-defendant besides Rizvi to enter a plea to aggravated identity theft was Abdul Nadeem Khan.

Rizvi subsequently submitted a letter, dated July 17, seeking to withdraw his plea of guilty.  In his letter, Rizvi contends that Mr. Soloway told him that he had to state that he knew "the purpose of the false identity was to commit 'Bank Fraud' or 'Financial Fraud'," or the Court would not accept the plea.  Rizvi adds that he is "actually innocent of the crime of

'Aggravated identity Theft'," since he did not know that the stolen identities would be used for the purpose of committing bank fraud.

At a conference on July 28, Mr. Soloway was relieved as counsel and John Burke was appointed to represent Rizvi. On August 19, Mr. Burke submitted a memorandum in support of the motion. The Government opposed the motion on September 2.

DISCUSSION

Rizvi contends that he is not guilty of the crime of aggravated identity theft since he did not know that stolen identities would be used to commit bank fraud. In support of his contention, he points to a single passage in his plea allocution, which is as follows:

> THE COURT: "So you knew when you received this identity information, that it had been stolen from people?"
>
> RIZVI: "I didn't know that, but I know that something is wrong. They never told me about this, but something they tell me to make, and I did it and they do things wrong. I know that."

Pursuant to Rule 11(d)(2)(B), Fed. R. Crim. P., a defendant may withdraw his plea of guilty if he can show "a fair and just reason" for the withdrawal. In considering such a request, a court generally considers

> (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty

3

>    plea; (2) the amount of time that has elapsed between the plea and the motion …; and (3) whether the government would be prejudiced by a withdrawal of the plea.

United States v. Gonzalez, 647 F.3d 41, 56 (2d Cir. 2011)(citation omitted). "[G]iven the strong societal interest in the finality of guilty pleas, a defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw his guilty plea." Id.(citation omitted). "[N]o hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory." Id. at 57.

Rizvi has not shown that his motion should be granted. As an initial matter, Rizvi does not assert that there was any flaw in the Rule 11 colloquy. He was placed under oath, found to be competent after appropriate questioning, and advised of his rights, the elements of the crime with which he was charged and its penalties. He indicated that he was "very" satisfied with his attorney and understood both his rights and the consequences to him of entering a plea of guilty. He was advised that the crime of aggravated identity theft carried a mandatory term of imprisonment of two years, among other penalties. He identified his written plea agreement with the Government and acknowledged

that by signing it he had agreed that the Court could sentence him to a two-year term of imprisonment.

When asked to explain what he did that made him believe he was guilty of this crime, he revealed in a series of answers that he was working with people who wanted to obtain identification documents using stolen identity information. They provided the stolen identity information to Rizvi, he used that information to obtain fake IDs created by other people he knew, and then he provided the fake IDs to the people with whom he was working. At that point in the colloquy, the question and answer on which the motion is premised and which is recited above occurred. In that answer, Rizvi indicated that he knew something about the identity information he was given was "wrong", but he was not told the information had been stolen. The defendant and his attorney then spoke with each other, and the defendant continued:

> RIZVI: "Yes -- they stole from someone and they give it to me information, and I then give it to them and I know they are doing something wrong about the fraud, the bank fraud or make credit cards."

As the colloquy continued, Rizvi explained that he gave the stolen identity information to one man, who was named Hugo, and that it was Hugo who made the false identification documents for him. Another person named Salami, who was working with co-defendant Nadeem Khan, paid Rizvi for delivering the false

5

identification documents. When asked, "Then, did you understand that those false driver's licenses and immigration documents were used in turn to defraud banks?", Rizvi answered, "Yes." When asked, "And you understood that at the time that you were participating in these events[?]", Rizvi again answered, "Yes." Later, the Court inquired again, "So you were being paid for your role by someone who you understood was using this false information and documents to defraud banks, am I right?" Again, Rizvi answered, "Yes, your Honor."

Rizvi also explained how he came to be involved with his co-defendants in this endeavor. He reported that he was working in jewelry in Manhattan, but that everyone who participated in this crime, "five, eight people", were connected to a cell phone shop in Jackson Heights. "I go over there, he is my friend, to have a drink. And they talk about all of this[.]"

There was one additional series of questions about the fraudulently obtained credit cards being used to defraud banks. The defendant was asked, "Mr. Rizvi, did you understand that the way the banks were going to be defrauded was by using these fake identification documents to get credit cards?" Rizvi answered, "Yes." He was then asked, "And then use those credit cards to make purchases; is that what you understood was going to happen, use the credit card [sic] to buy things?" Rizvi responded, "Yes, but they did it." The Court asked, "But you understood

6

that's what was happening?" Rizvi answered, "Yes, yes, your Honor."

In sum, there was no defect in the Rule 11 inquiry that would require Rizvi's motion to be granted. Rizvi acknowledged knowledge of every element of the criminal scheme and knowing participation in the offense.

Second, the plea allocution provides no support for Rizvi's claim that he did not understand when he was engaged in the scheme that the fraudulent identification documents would be used to commit bank fraud. As described above, Rizvi repeatedly acknowledged understanding that the fraudulent identification documents would be used to obtain credit cards, and that the use of these fraudulently obtained credit cards to purchase goods would in turn defraud banks.

The question and answer to which Rizvi has referred in his motion to withdraw his plea did not concern his knowledge of whether banks were a victim of the scheme. Instead, they referred to his knowledge that the identity information with which he was provided had been stolen. Moreover, after initially denying knowing that the identity information had been stolen, he repeatedly admitted understanding at the time that the information had been stolen.

Third, Rizvi's motive in now denying that he understood that the scheme in which he engaged would defraud banks is not

7

hard to discern.  The crime to which he pleaded guilty requires the imposition of a two year sentence of imprisonment.  Section 1028A of Title 18, United States Code, imposes a mandatory two year term of imprisonment when a "means of identification of another" is transferred, possessed or used without lawful authority during or in relation certain enumerated crimes.  18 U.S.C. § 1028A(a)(1).  One of the enumerated offenses is the conspiracy to commit bank fraud.  Id. at §§ 1028A(c)(5), 1344, and 1349.

Finally, the timing of Rizvi's motion further undermines its legitimacy.  "Whereas a swift change of heart may indicate[a] plea made in haste or confusion," a defendant's months-long wait to move for withdrawal of his plea of guilty strongly supports a finding that the defendant's plea was entered voluntarily.  United States v. Doe, 537 F.3d 204, 213 (2d Cir. 2008) (citation omitted).  Rizvi was the first of his co-defendants to plead guilty.  The last of the pleas occurred on July 1.  With that final plea it became clear that only one other co-defendant pleaded guilty to a crime requiring the imposition of a mandatory two year term of imprisonment.  More than two months after his own plea and over two weeks after the last plea by a co-defendant, Rizvi submitted his motion to withdraw his plea.  This sequence of events suggests that Rizvi is unhappy with the sentence he will receive, not that he had

any doubt that the fraudulent document scheme in which he was engaged would defraud banks.

To support his motion, Rizvi argues that his Rule 11 colloquy is not evidence of his knowledge of bank fraud since he simply answered "yes" to many questions.  Rizvi's reliance on United States v. Andrades, 169 F.3d 131 (2d Cir. 1999), and Rizzo v. United States, 516 F.2d 789 (2d Cir. 1975), is misplaced.  In Andrades, "[t]he district court's effort to ensure that [the defendant] understood the nature of the conspiracy charge was limited to [the court] reading the charge and eliciting a 'yes, sir' from [the defendant]."  Andrades, 169 F.3d at 135.  Rizzo is likewise inapposite.  At his plea allocution, the defendant in that case "vehement[ly] deni[ed]" knowledge of an essential element of the crime to which he plead guilty.  Rizzo, 516 F.2d at 794.  In contrast, this was a lengthy allocution in which Rizvi was repeatedly informed about the crime of bank fraud and aggravated identity theft, and repeatedly proclaimed his guilt to every element of those crimes.

CONCLUSION

Rizvi's July 17, 2011 motion to withdraw his guilty plea is denied.

SO ORDERED:

Dated: New York, New York
January 5, 2012

_____
DENISE COTE
United States District Judge